UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN R. TURK,<br><br>            Plaintiff,<br><br>    v.<br><br>ASHLEY PFILE, et al.,<br><br>            Defendants. | No.  2:14-cv-2186 DB<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges defendants' deliberate indifference to his medical needs resulted in the partial loss of vision in one eye. Before the court is defendants' motion for summary judgment. For the reasons set forth below, this court recommends defendants' motion be granted.

**PROCEDURAL BACKGROUND**

Plaintiff originally filed this suit in Solano County Superior Court on July 21, 2014. Defendants removed the case to federal court in September 2014 and immediately filed an answer. (See ECF No. 2, 4.) On April 18, 2016, defendants filed the present motion for summary judgment. (ECF No. 14.)

////

////

1

## ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges that shortly before he was scheduled to have surgery to have a sebaceous cyst removed from his back, he saw defendant Dr. Win at the medical clinic at California State Prison-Solano ("CSP-Solano") where he is incarcerated. At the time, plaintiff was taking aspirin daily for atrial fibrillation. Dr. Win advised plaintiff to stop taking aspirin four days before the surgery. Plaintiff states that he told Dr. Win that when he had had surgery previously, a Dr. Ma at New Folsom Prison had replaced the aspirin with injections of "lovenox," also an anticoagulant, four days before surgery. Plaintiff contends defendant Win did not order any replacement for the aspirin. (Compl. ¶ 7 (ECF No. 2 at 11-12).)

When he arrived at the hospital for his surgery, plaintiff included the atrial fibrillation on his medical history form. Plaintiff was given anesthesia prior to surgery and pain medication afterwards. (Id. ¶ 8.) When he returned to the prison, he saw Dr. Win but was not directed to resume taking aspirin. (Id. ¶ 9.)

Shortly after the surgery, plaintiff was walking in the prison yard and his vision suddenly became blurry. He was taken to the TTA[1] and was examined by a nurse who determined that his peripheral vision was "out." He was later examined by an ophthalmologist who "detected an abnormal blood vessel behind the eye leading to the brain that was [gorged] with blood." (Id. ¶ 9.) He was then taken to the U.C. Davis Medical Center for an MRI and CAT scan and to be seen by a neurologist. The neurologist recommended plaintiff take a "blood thinner stronger than aspirins.[2]" (Id. ¶¶ 10-11.)

////

////

---

[1] TTA appears to stand for the Triage and Treatment Services clinic. (See Aug. 4, 2013 "Triage and Treatment Services Flow Sheet" (ECF No. 14-5 at 25).)

[2] There is some indication in his filings that plaintiff is alleging defendants acted with deliberate indifference with respect to these prescriptions from the neurologist in November 2013. (See Pl.'s Memo. (ECF No. 20-1) at 7.) However, plaintiff has failed to show he suffered any injury as a result of changes in these prescriptions or that either defendant acted with deliberate indifference in making the changes. Therefore, the court will not consider defendants' actions in November 2013 with respect to plaintiff's medications as part of plaintiff's current suit.

1 Because the cyst removed from his back was cancerous, plaintiff had a second surgery. During a consultation with the surgeon before surgery, plaintiff was advised not to stop taking the aspirin prior to surgery. (Id. ¶ 13.)

Plaintiff states that he has lost the peripheral vision in his left eye and contends it is a result of the failure to receive anticoagulants prior to surgery. (Id. ¶ 12.)

Plaintiff alleges that defendants' actions violated his rights to due process and to be free from cruel and unusual punishment under both the state and federal constitutions. He seeks compensatory and punitive damages against both defendants.

## MOTION FOR SUMMARY JUDGMENT

Defendants contend plaintiff's claim is viable under 42 U.S.C. § 1983 only for an Eighth Amendment violation. The court agrees. Plaintiff's claims regarding his medical care do not implicate the Due Process Clause of the Federal Constitution because he is serving a criminal sentence in prison. Therefore, analysis of his medical claims is appropriate under the Eighth Amendment's proscription on cruel and unusual punishment. See Simmons v. Navajo Co., 609 F.3d 1011, 1017 (9th Cir. 2010) (citing Bell v. Wolfish, 441 U.S. 520, 537 n. 16 (1979)). In any event, whether the analysis is under the Eighth Amendment or the Due Process Clause, the court uses the same standards, and would come to the same result. Id.

With respect to plaintiff's claims under the California Constitution, there is no private cause of action for damages under the California Constitution's cruel and unusual punishment clause or under its due process clause. See Giraldo v. Dept. of Corr. & Rehab., 168 Cal. App. 4th 231, 253-56 (2008) (no private cause of action under Calif. Const. Art. 1, Sec. 17's ban on cruel and unusual punishment); Carlsbad Aquafarm, Inc. v. Dept. of Health Servs., 83 Cal. App. 4th 809, 823-24 (2000) (no private cause of action under Calif. Const. Art. 1, Sec. 7's due process clause); see also Ingram v. San Francisco Police Dept., No. C 13-0224 CW, 2013 WL 1701754, at *3 (N.D. Cal. Apr. 18, 2013) (citing Carlsbad Aquafarm); Wilkins v. Freitas, No. CIV S-09-0323 WBS DAD P, 2010 WL 4323005, at *3 (E.D. Cal. Oct. 26, 2010) (citing Giraldo). Therefore, the court considers plaintiff's claim only as a violation of the Eighth Amendment of the U.S. Constitution.

In challenging plaintiff's Eighth Amendment claim, defendant Pfile contends that she did not treat plaintiff and therefore was not deliberately indifferent to his medical needs. Defendant Win contends he discontinued plaintiff's aspirin at the recommendation of plaintiff's surgeons and that plaintiff was to resume taking aspirin immediately after the surgery. In addition, both defendants contend that plaintiff has failed to show the lack of aspirin or other anticoagulant caused the loss of his peripheral vision.

## I.     Legal Standards

### A.     Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.). See also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district

1    court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

2    If the moving party meets its initial responsibility, the burden then shifts to the opposing
3    party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
4    Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the
5    existence of this factual dispute, the opposing party typically may not rely upon the allegations or
6    denials of its pleadings but is required to tender evidence of specific facts in the form of
7    affidavits, and/or admissible discovery material, in support of its contention that the dispute
8    exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must
9    demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
10   suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
11   T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and
12   that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict
13   for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.
14   1987).

15   In the endeavor to establish the existence of a factual dispute, the opposing party need not
16   establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
17   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
18   trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
19   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
20   Matsushita, 475 U.S. at 587 (citations omitted).

21   "In evaluating the evidence to determine whether there is a genuine issue of fact," the
22   court draws "all reasonable inferences supported by the evidence in favor of the non-moving
23   party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the
24   opposing party's obligation to produce a factual predicate from which the inference may be
25   drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
26   aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing
27   party "must do more than simply show that there is some metaphysical doubt as to the material
28   facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

1  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

2  omitted).

### B.  Other Legal Standards

#### 1.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

#### 2.  Legal Standards for Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or

causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for

1  the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

2  Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**II.     Undisputed and Disputed Material Facts**

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 14-2.) Plaintiff's filings in opposition to defendants' motion for summary judgment fail to comply with Local Rule 260(b). Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Plaintiff filed four documents in opposition to defendants' motion: (1) a "Memorandum of Points and Authorities[3]" (ECF No. 20-1); (2) a "Declaration" in opposition (ECF No. 20-2); (3) a

---

[3] In his memorandum and in his declaration in opposition to defendants' motion, plaintiff refers to a "long pattern of medical abuse within the prison" starting in the mid-1990s. (See ECF No. 20-1; 20-2.) The court will not consider these as new allegations of deliberate indifference in this case. Plaintiff has not shown defendants here were involved in any way in that "abuse" or that it

1  "Declaration . . . Disputing Defendants' (Separate Statement of Undisputed Material Facts" (ECF
2  No. 20-3); and (4) a Request for Admissions[4] (ECF No. 20-4).  In his declaration disputing the
3  DSUF, plaintiff does not reproduce the itemized facts from the DSUF and admit or deny them.
4  However, plaintiff does appear to take issue with some statements made in the DSUF.
5     In light of plaintiff's pro se status, the court has reviewed plaintiff's filings in an effort to
6  discern whether he denies any material fact asserted in the DSUF.  The court finds plaintiff
7  disputes a few material facts.  They are discussed below in section B.  Below in section A, the
8  court sets out the material facts that appear to be undisputed.

   **A.  Undisputed Material Facts**

10     At all relevant times, plaintiff was a prisoner incarcerated at CSP-Solano, defendant Win
11  was a Physician and Surgeon employed at CSP-Solano, and defendant Pfile was the Chief
12  Physician and Surgeon at CSP-Solano.  (DSUF ##1, 21.)
13     Plaintiff has a history of atrial fibrillation dating from 1997.  (DSUF #22.)
14     On July 2, 2013, plaintiff was seen by a surgeon at Doctor's Medical Center for pre-op
15  assessment and instructions relating to removal of a mass over plaintiff's right scapula blade.  The
16  surgeon instructed plaintiff to stop taking aspirin four days before the surgery.  (DSUF #25.)
17     On July 3, 2013, plaintiff was seen by a nurse at the prison for pre-op instructions and
18  education.  Plaintiff was instructed to stop blood thinners.  (DSUF #26.)
19     On July 8, 2013, Dr. Win, a physician at CSP-Solano, examined plaintiff and informed
20  him of the surgeon's recommendation to discontinue aspirin four days before the surgery.  Also at
21  that time, Dr. Win prescribed Direct Observation Therapy, which requires a nurse to observe
22  plaintiff taking his medication.  Dr. Win felt this was necessary due to plaintiff's history of

---

is relates to his current claim that he suffered vision loss as a result of the lack of blood thinners before his surgery.

[4] Plaintiff signed this request for admissions on July 21, 2016.  (ECF No. 20-4.)  Plaintiff is advised that a request for admissions must be served on the opposing party during discovery.  The time for conducting discovery closed in January 2016.  (See Oct. 9, 2015 Discovery and Scheduling Order (ECF No. 5) at 5.)  Therefore, the request for admission is untimely and defendants have no obligation to respond to it.

1    uncontrolled blood pressure.  Plaintiff declined this therapy.  (DSUF #27.)

2    On July 10, 2013, plaintiff had surgery to have the cyst excised from his back.  Post-op
3    instructions from the surgeon indicated that plaintiff had been told he needed to start taking
4    aspirin again after his surgery. (DSUF #28.)

5    On July 15, 2013, Dr. Win examined plaintiff and recommended he continue taking
6    aspirin.  (DSUF #29.)

7    Plaintiff suffered a stroke which caused a loss of vision in his left eye.  (DSUF #30.)  Prior
8    to the stroke, Dr. Win had given plaintiff a CHADS 2 score of 1.  CHADS stands for "Congestive
9    Heart Failure, Hypertension, Age, Diabetes, Stroke."  (DSUF #24.)  After plaintiff's stroke and
10   following the back surgery, Dr. Win increased plaintiff's CHAD 2 score to 3, meaning he was at
11   greater risk for stroke.  (DSUF #24,  31.)

12   When plaintiff returned to Doctor's Medical Center for a pre-op appointment before the
13   second back surgery, he was advised to continue taking aspirin.  (DSUF #31.)

14   On November 6, 2013, plaintiff saw a neurologist at the U.C. Davis Medical Center.  The
15   neurologist prescribed Xarelto 20 mg and Pradaxa 105 mg.  The next day, Dr. Win gave a
16   telephone order to discontinue the Xarelto because of a potential drug interaction with other
17   prescription medication. (DSUF #32.)   A week later, defendant Pfile discontinued plaintiff's
18   prescriptions for Pradaxa and Aspirin and reinstated the Xarelto prescription.  (DSUF #33.)

19   At all relevant times, defendant Pfile was the Chief Physician and Surgeon at CSP-Solano.
20   Defendant Pfile approved defendant Win's requests for plaintiff to see outside doctors.  She
21   approved the following relevant requests on the following dates:

22     (1)  On May 29, 2013, she approved a request for plaintiff to see a dermatologist regarding the
23   cyst on his back;

24     (2)  On July 22, 2013, she approved an urgent request for plaintiff to have a PET CT scan
25   regarding the malignant cyst on his back;

26     (3)  On August 6, 2013, she approved a referral to an ophthalmologist because plaintiff was
27   seen at the TTA on August 4, 2013 and it was found that he had a "loss of left temporal visual
28   field;"

1  (4) On August 16, 2013, she approved requests for the services of a retinal specialist and an MRI regarding plaintiff's eye problems;

(5) On September 3, 2013, she approved an urgent request for a neurologist, a cardiologist, and a head CT scan regarding plaintiff's eye problems;

(6) On February 12, 2014, she "performed a full chart review and brief in-person interview" with plaintiff in response to his health care appeal. She denied his appeal at the second level. (DSUF ##1-12.)

### B.  Disputed Material Facts

Plaintiff contests two aspects of defendants' statement of the facts: the date plaintiff experienced the loss of vision and whether defendant Win advised plaintiff to resume taking aspirin after his first back surgery.

#### 1.  Date of Plaintiff's Loss of Vision

Plaintiff states that he lost his vision on July 13, 2013, not in August as defendants state. According to plaintiff, his "irreparable injury occurred on July 13, 2013 and he was taken to TTA clinic." (July 21, 2016 Decl. of Allen R. Turk ("Pl.'s Decl.") ¶ 1 (ECF No. 20-3 at 1).) However, plaintiff presents no evidence to support that claim. Defendants present evidence from plaintiff's medical records which show plaintiff was seen on August 4, 2013 for blurry vision.

First, defendants provide a copy of a "Triage & Treatment Services Flow Sheet" dated August 4, 2013. (Ex. A to Win Decl. (ECF No. 14-5 at 25).) It states that plaintiff was brought to the TTA office on August 4, 2013 at 9:30 a.m. complaining of blurry vision.

Second, defendants provide a copy of an August 6, 2013 request for ophthalmology services for plaintiff. Therein, Dr. Win states that plaintiff "went to TTA on 8/4/13 for blurred vision of left eye." (Ex. A to Apr. 6, 2016 Decl. of Ashley Mulligan-Pfile, M.D. ("Pfile Decl.") (ECF No. 14-4 at 9).) It is also worth noting that in Dr. Win's progress notes from his July 15, 2013 appointment with plaintiff, there is no mention of a July 13 visit by plaintiff to the TTA clinic or of any eye problems. (Id. at 23.)

Defendants have shown that plaintiff's stroke and resulting vision loss occurred on August 4, 2013. Plaintiff has failed to present evidence showing those events occurred earlier.

11

### 2. Did Dr. Win Advise Plaintiff to Resume Aspirin?

In his complaint, plaintiff contends that Dr. Win never told him to start taking aspirin again after his surgery.[5] Dr. Win states that plaintiff's aspirin prescription was renewed on his arrival back at the prison after his first surgery. (Win Decl. ¶ 15 (ECF No. 14-5 at 4).) In Dr. Win's notes of plaintiff's July 15, 2013 appointment with him, Win states that plaintiff was at that time taking 162 mgs of "ASA." (Ex. A to Win Decl. (ECF No. 14-5 at 23).) According to the Merriam-Webster Dictionary, "ASA" is the medical term for aspirin. See https://www.merriam-webster.com/medical/ASA.

Plaintiff does not reiterate his contention that Dr. Win failed to renew his aspirin prescription in his filings in opposition the defendants' summary judgment motion. The court finds plaintiff continued to be prescribed aspirin when he returned from his first surgery and there is no disputed material issue of fact on this point.

### III. Analysis

To summarize, plaintiff's complaint is that he suffered a stroke and a resulting loss of peripheral vision as a result of not taking aspirin, or a substitute blood thinner, prior to and immediately after his July 10, 2013 back surgery. Plaintiff contends defendants should have prescribed a blood thinner during that time. Defendants have met their burden of showing there are no genuine issues of material fact that the short-term lack of blood thinners prior to plaintiff's surgery did not cause plaintiff's stroke 25 days later. Further, defendants have shown that plaintiff should have resumed taking aspirin after his surgery. If he did not do so, defendants bear no responsibility because plaintiff refused to have medical supervision when he took his

---

[5] A complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"). Plaintiff's complaint is not verified. (See ECF No. 2 at 16.) Nonetheless, to be thorough and to give this pro se plaintiff every benefit of the doubt, the court considers here plaintiff's assertion that Dr. Win did not advise him to start taking aspirin again.

1  medications. Finally, defendants have shown they were not deliberately indifferent to plaintiff's
2  medical needs.  Plaintiff received continuous medical care during this time, with a number of
3  appointments outside the prison, to address the cancerous growth on his back and his eye
4  problems following the stroke.

5  Plaintiff has failed to present evidence demonstrating a triable issue of fact.  To the extent
6  plaintiff brings up his prescriptions and care after August 4, 2013 when he suffered the stroke, the
7  court finds those facts are not relevant to plaintiff's care prior to the stroke as plaintiff appears to
8  contend.  Dr. Win explains that doctors recommended plaintiff stay on aspirin during his second
9  surgery and later recommended a different type of blood thinners based on the fact plaintiff had
10 had the stroke, not because that was the standard of care prior to that time.  (See Win Decl. ¶¶ 19-
11 21.)  Plaintiff fails to present any evidence showing otherwise.

12 For the foregoing reasons, the court finds there are no genuine issues of material fact
13 regarding defendants liability under the Eighth Amendment for plaintiff's loss of vision and
14 defendants' April 18, 2016 motion for summary judgment should be granted.

15 Because all parties have not consented to the jurisdiction of a magistrate judge, the Clerk
16 of the Court is HEREBY ORDERED to assign a district judge to this case.

17 For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendants'
18 motion for summary judgment be granted.

19 These findings and recommendations will be submitted to the United States District Judge
20 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
21 after being served with these findings and recommendations, any party may file written
22 objections with the court and serve a copy on all parties. The document should be captioned
23 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
24 objections shall be filed and served within seven days after service of the objections.
25 ////
26 ////
27 ////
28 ////

The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 30, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/turk2186.msj fr